## No. 20,198.

BESSIE WAGNER *v.* CHARLES N. FAIRLAMB, ET AL.

(379 P. [2d] 165)

Decided February 18, 1963.    Rehearing denied March 11, 1963.

Messrs. LOESCH and KREIDLER, for plaintiff in error.

Messrs. TRAYLOR, ELA, KLADDER & HARSHMAN, Mr. DAVID B. PALO, for defendants in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

DEFENDANTS in error, who were plaintiffs in the trial court, will be referred to as plaintiffs in this opinion. They alleged that they have a right-of-way for a recently constructed road to the south half of the Bradley claim across mining property owned by defendant. The issues were made by an amended complaint and the answer thereto. Trial was had to the court with an advisory jury, with the result that plaintiffs obtained judgment for the right-of-way claimed plus damages of $150.00. The judgment entered was based upon the existence of an implied easement, stemming from a common grantor, one A. E. Reynolds, who in 1919 had conveyed the north half of the Bradley claim to defendant's predecessor in title.

Plaintiffs' pleadings alleged several reasons why they were entitled to the claimed easement or right-of-way. The trial court narrowed the issues to those of whether a right-of-way had arisen by (1) implication or (2) by prescriptive use. The advisory jury found in the affirmative on both issues, but in its findings of fact the court concluded there was insufficient evidence to support the special verdict on adverse possession. It adopted, however, the jury's verdict as to a right-of-way by "implication" (meaning thereby one by pre-existing use).

The properties involved besides the south half of the Bradley claim, owned by plaintiffs, and the north half of the Bradley owned by defendant, are the Red Jacket

claim, owned by defendant, and the Pioneer Mill site, owned by Idarado Mining Company.

The plaintiffs' recently constructed road is on or crosses all these properties allegedly following an old route first running easterly on the north slope, thence southwesterly across a stream, then northeasterly to its terminus on the south slope. Plaintiffs only dispute is with defendant, the owner of the Pioneer Mill Site not being a party to this action. The claims themselves run generally northwest-southeast across a narrow canyon and are bisected near their middle by the aforementioned small stream that flows in a westerly direction. The Red Jacket claim lies along the westerly side of the Bradley except for a pointed sliver of the Pioneer Mill Site separating the two claims from south to north for about three-fourths of their length. The south half of the Bradley is on the south bank of the stream.

The evidence is that prior to 1919 Reynolds owned the entire Bradley claim; that at the time there was a public road which entered the west end of the Cimarron mill site and stopped about the middle of the site, and that this road continued on easterly as a private road across the mill site and the north half of the Bradley; further, that a mule pack or wagon trail at one time had served the south half of the Bradley and joined this road. Parts of this latter trail had long since become invisible through disuse and by the growth of bushes and other foliage. It also appears that the plaintiffs had bulldozed their truck road generally along the route of the old mule trail and in so doing had excavated across part of the defendant's dump. Shortly after defendant discovered plaintiffs' road she barricaded it and this lawsuit followed.

The record is voluminous and contains numerous exhibits including several photographs and maps as well as some conflicting testimony and some stipulated facts. The several assigned grounds for reversal lead us to

conclude that the entire dispute can be resolved by answering the following two questions:

1. Does the evidence prove all the elements necessary to establish either an implied easement by way of a pre-existing use or a way of necessity?

2. The trial court having decreed that the defense of laches for failure to assert an alleged way of necessity for many years was not applicable because of generally poor economic conditions in the mining industry in the area in question, of which the court took judicial notice, did it thereby commit error?

The law has long recognized the interest in land known as an "easement" and that it can take several forms. One is the actual or express easement that appears in a deed or contract for the sale of land. This form is easy to recognize and usually not difficult to apply if fully described. A second type is the implied easement, which creates problems for both litigants and the courts. It is one not expressed by the parties in writing, but which arises out of the existence of certain facts implied from the transaction. Generally implied easements have not been looked upon with favor by the courts. Under some circumstances and facts, however, they are recognized. See 1 *Thompson, Real Property,* §§390 and 394 (perm. ed. 1939).

█ Implied easements have been subdivided into those which are implied due to a grant and those implied from a reservation. The former moves in favor of the grantee and the latter in favor of the grantor. Some courts have treated such easements differently. See 3 *Tiffany, Real Property,* §791 (3rd ed.).

In 1 *Thompson,* supra, §396, at page 647, the necessary elements to prove an implied easement are set forth as:

"(1) Unity and subsequent separation of title; (2) obvious benefit to the dominant and burden to the servient tenement existing at the time of the conveyance; (3) use of the premises by the common owner in their altered condition long enough before the convey-

ance to show that the change was intended to be permanent; and (4) necessity for the easement."

. It seems well to point out here that *Thompson's* four detailed requirements apply essentially to an implied easement by pre-existing use, for his third ground is not necessary for the existence of an implied easement. by way of necessity as will more fully hereinafter appear. In any event an examination of this record reveals that the evidence does not support the trial court's finding of an implied easement by way *of a pre-existing use* since at best a terminated intermittent rather than a permanent use was shown. However, if the record discloses that that court arrived at the correct result for the wrong reason we will not set aside its judgment. *Scott v. Bohe*, 81 Colo. 454, 256 Pac. 315 (1927). Thus, we need to consider further the facts and the law applicable to this case.

Part of the evidence here is that the south half of the Bradley was mined prior to 1919, but there is little evidence as to how this operation was carried on. In addition, there was evidence to show the presence of a mining dump and a tailing's pond in one part of the area where the new road has been constructed, which would tend to negate the existence of any former road in those locations unless it existed before they were created. At least one of the early photographic exhibits indicates such a route however. The obvious conclusion is that if a road had once been there its use had been abandoned possibly even before the severance; thus defendant might not have been placed on notice at the time of severance that an easement existed. Though the remaining three enumerated elements for an implied easement due to a pre-existing use appear to be present here to some degree, nevertheless unless all four can be identified, such an easement is not created in law.

We must next consider whether this record discloses the applicability of the doctrine of implied easement *by way of necessity*. This rule has recently been recog-

nized in Colorado in *Fred Martino v. Charles G. Fleenor,* 148 Colo. 136, 365 P. (2d) 247 (1961), and is controlling in this case if the facts warrant its application as we conclude they do.

■ An implied way of necessity arises when the owner of a parcel of land conveys and grants part thereof to another, which leaves the remainder of the land without ingress or egress, except over the part conveyed. In such case reservation of a way of necessity is implied. The most common application of the doctrine occurs, however, when it is implied with the grant, i.e., where the lands conveyed are without ingress or egress except over lands retained. In such a case the lands retained are held to be subject to an easement in favor of the grantee. See 17 A *Am. Jur. Easements,* §58.

■ It appears from the foregoing authorities that generally there are three requirements to be met before a way of necessity can be said to exist: The first requires that the original ownership of the entire tract be held by a single grantor prior to a division thereof. As previously noted, all of the Bradley claim originally was owned by A. E. Reynolds who conveyed away the north one-half thereof. The second requires that the necessity existed at the time of the severance. The evidence here indicates that in 1919, as at the present time, the south half of the Bradley was virtually inaccessible except by the route now in dispute. The third requirement is that the necessity for the particular right-of-way be great. Here the testimony of several residents of the Telluride area, as well as that of an expert witness (all borne out by the photographs in evidence), was to the effect that this is a very mountainous, rocky area with steep canyon walls, where roads at best are hazardous, expensive and dangerous to build. Documents in evidence support plaintiffs' contention that plaintiffs' road as now constructed is under all the circumstances the only practical method of affording ingress and egress for the purpose of mining or otherwise using

the south half of the Bradley. And, based upon conflicting evidence and its view of the area during the course of the trial, the trial court found that this road was necessary and that the necessity existed in 1919 as well as today. In this connection we take cognizance of the fact that some authorities have held that a way of necessity cannot exist merely because the land is too steep or too narrow for a reasonable route. See 2 *Thompson,* supra, §534. We hold that the rule as applied to property like this means a practical inability to have access any other way than by a way of necessity. Accord: *Crotty v. New River & Pocahontas Consol. Coal Co.,* 72 W. Va. 68, 78 S.E. 233, 46 L.R.A. (N.S.) 156. For this purpose the law assumes that no person intends to render property conveyed inaccessible for the purpose for which it was granted. And, of course the reverse is also true, i.e., that he does not intend to render lands retained inaccessible. The scope and type of the use, present and future, varies with the necessity. See 2 *Thompson,* supra, §550 (perm. ed. 1939).

▆ Nor does it matter that there is property belonging to a third person, whose rights have not been determined herein, involved in the location of this right-of-way. For the general and modern rule, which we approve, is that a right-of-way may be appurtenant to land even when the servient tenement is not completely adjacent to the dominant. See *Anno.,* 76 A.L.R. 597, and *Jones v. Stevens,* 276 Mass. 318, 177 N.E. 91, 76 A.L.R. 591 (1931).

Defendant also urges that the common law doctrine of implied easements has been superseded by "the Colorado Constitution, and by the Colorado Revised Statutes." In this she is in error. In *Crystal Park Company v. Morton, et al.,* 27 Colo. App. 74, 146 Pac. 566 (1915), it was held that the Colorado Constitution does not preclude such an easement when the court said:

"At the time of the adoption of our constitution the phrase 'ways of necessity' had a technical and limited

meaning at common law, and respondents contend that it is so used in the constitution. * * * If the exception in question has reference to the common-law way of necessity, it is not a grant of any right or power, for that right, arising from a private grant, had been recognized for more than two hundred years before the adoption of the constitution; nor would it be a reservation from the general inhibition against taking private property without consent of the owner, because, as has been said, the common-law way exists only by consent of the owner of the servient estate."

We turn now to the alleged error urged by defendant based on the trial court's taking judicial notice of the depressed condition of the mining industry during at least part of the period involved.

In this regard it should be pointed out that laches does not apply to a way of necessity for the law is clear that a way of necessity can remain dormant without affecting the right. 2 *Thompson,* supra, §533. Thus, we need not determine whether the judicial notice of mining conditions was error for it was immaterial.

The judgment is affirmed.

MR. JUSTICE MOORE not participating.