**STATE DEPARTMENT OF HIGHWAYS, DIVISION OF HIGHWAYS, State of Colorado, Petitioner,**

v.

**The DENVER AND RIO GRANDE WESTERN RAILROAD COMPANY, a Delaware corporation, Respondent.**

No. 88SC402.

Supreme Court of Colorado,
En Banc.

April 2, 1990.

Duane Woodard, Colorado Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Lynn B. Obernyer, First Asst. Atty. Gen., Natural Resources Section, and Harry S. Morrow, Asst. Atty. Gen., Natural Resources Section, Denver, for petitioner.

Kathleen M. Snead, Denver, for respondent.

Peter C. Dietze and William F. Nagel, Dietze, Davis and Porter, P.C., Boulder, for amicus curiae Transamerica Title Ins. Co.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to determine whether the court of appeals erred when it held that the State Department of Highways (Highways) could not condemn a private way of necessity over railroad tracks owned by respondent, Denver & Rio Grande Western Railroad Company (Railroad). *State Dep't of Highways v. Denver & Rio Grande W. R.R.*, 757 P.2d 181 (Colo. Ct.App.1988). The trial court granted Highways' condemnation of a private crossing over the Railroad's property based on its conclusion that the crossing was for a private way of necessity and, as such, was not subject to the jurisdiction of the Public Utilities Commission (PUC) in accord with section 40–4–106, 17 C.R.S. (1984). Moreover, the trial court held that the condemnation by Highways was constitutional because it had an overall public purpose. The court of appeals reversed the trial court, holding that the crossing was not for an overall public purpose and that Highways lacked the requisite statutory authority to condemn a private way of necessity. We affirm the court of appeals' decision, by applying a different analysis, and hold that Highways does not have statutory authority to condemn a private way of necessity.

## I.

The property at issue in this eminent domain proceeding consists of railroad tracks owned by the Railroad which are situated between several parcels of land owned by J. Gordon Bair (Bair) in Glenwood Canyon. Two parcels of Bair's land are located north of the railroad tracks and one parcel lies to the south. One parcel, parcel A, lies north of the Colorado River; the second parcel, parcel B, lies south of the river but north of the tracks, and the third parcel, parcel C, the southernmost parcel, lies south of the railroad tracks.

Attached as an appendix to this opinion is a diagram showing the relevant property.

Since the 1920's, Bair has operated a sheep ranch in the Glenwood Canyon area. Prior to the construction of I–70, Bair transported his sheep to parcel A and herded them across the Colorado River by way of a planked footbridge to parcel B. Bair would then herd the sheep either over the railroad right-of-way or through the Railroad's trestle at Ike Creek to parcel C, where they would graze. Bair has never had vehicular access to parcel C.

In 1982, as part of the construction of Interstate Highway 70 through Glenwood Canyon (I–70), Highways entered into an agreement with Bair in order to obtain parcel A for use as a public rest area for motorists using I–70. Parcel A, which had been Bair's staging area, was acquired by Highways under threat of condemnation and pursuant to a memorandum agreement dated February 9, 1982. As partial consideration for the land acquired from Bair, Highways agreed to build a bridge over the Colorado River joining parcels A and B, an "at grade" crossing over the railroad tracks to parcel C, and an access road leading from the bridge through parcel B and over the tracks to parcel C. As a result of Highways' construction, Bair would have vehicular access to parcel C for use as a new staging area. The agreement between Bair and Highways provided that Bair would move all ranch operations to the south side of the Colorado River after completion of the bridge and that the bridge, road, and railroad crossing would become the property of Bair after construction and would not be open to public use.

Although the Railroad was contacted by Highways concerning the possibility of an agreement to erect the crossing, it is disputed whether the Railroad ever agreed to allow the construction of the crossing.[1] In any event, after construction of the I–70

---

1. The record indicates that the Railroad initially agreed to a crossing "at grade" if there were locked gates on either side of the crossing and if only the Bairs would use it. Soon after, however, the Railroad refused to enter into an agreement with Bair and Highways due to its concern for the hazardous nature of the cross-

ing. However, the Railroad was willing to allow Highways to build a "grade separation" crossing over or under the tracks. Highways offered to build an underpass for Bair, but Bair refused this offer and insisted that the contract between Highways and himself be honored.

highway project had begun, the Railroad refused to allow the erection of the crossing "at grade."

Highways, thereafter, filed this eminent domain proceeding seeking to condemn a local service road for the needed crossing pursuant to section 43-3-105, 17 C.R.S. (1984).[2] The Railroad challenged the proceeding, alleging that the condemnation was an unconstitutional taking because it was for a private use, and that, if the taking was for a public use, the trial court lacked jurisdiction because a public crossing is within the primary jurisdiction of the PUC.[3] *City of Craig v. PUC*, 656 P.2d 1313 (Colo.1983); *Colorado and S. Ry. v. District Court*, 177 Colo. 162, 493 P.2d 657 (1972).

At the hearing, Highways sought leave to amend its petition in order to condemn a private way of necessity under Article II, Section 14 of the Colorado Constitution rather than a local service road. Highways argued that by asking for a private way of necessity across the tracks rather than a public crossing, jurisdiction remained in the

trial court instead of the PUC. The trial court allowed Highways to amend its petition and determined that the condemnation was for a private way of necessity and as such, was not within the jurisdiction of the PUC. Furthermore, the trial court held that the condemnation was constitutional because it was related to the I-70 project and was thus for an overall public use.

The court of appeals reversed the trial court and found that (1) the facts did not justify a private way of necessity; (2) the Highway Department lacked statutory authority to condemn a private way of necessity; and (3) the condemnation was inappropriate because the necessary public purpose required when a public authority seeks to condemn was not present in this case.

## II.

■ Highways asserts that its condemnation action is authorized by Article II, Section 14 of the Colorado Constitution which permits private property to be taken for a private way of necessity. Although

---

**2.** Section 43-3-105, 17 C.R.S. (1984) prescribes when local service roads may be laid out and states in relevant part:

> Whenever a freeway is designated under the provisions of this part 1, the chief engineer is authorized to lay out and construct local service roads or designate as local service roads any existing street or public way if the same is within reasonable distance of such freeway whenever, in his opinion, there is a particular danger to the traveling public of collisions due to vehicles entering the freeway from the sides thereof. . . .

**3.** *Section 40-4-106, 17 C.R.S. (1984), provides that the Public Utilities Commission has authority over the construction and location of public railroad crossings:*

> **Rules for public safety—crossings—allocation of expenses.** (1) The [Public Utilities Commission] shall have power, after hearing on its own motion or upon complaint, to make general or special orders, rules, or regulations or otherwise to require each public utility to maintain and operate its lines, plant, system, equipment, electrical wires, apparatus, tracks, and premises in such manner as to promote and safeguard the health and safety of its employees, passengers, customers, subscribers, and the public and to require the performance of any other act which the health or safety of its employees, passengers,

customers, subscribers, or the public may demand.

> (2)(a) The commission has the power to determine, order, and prescribe, in accordance with the plans and specifications to be approved by it, the just and reasonable manner including the particular point of crossing at which the tracks or other facilities of any public utility may be constructed across the tracks or other facilities of any other public utility at grade, or above or below grade, or at the same or different levels, or at which the tracks or other facilities of any railroad corporation may be constructed across the tracks or other facilities of any other railroad corporation or across any public highway at grade, or above or below grade, or at which any public highway may be constructed across the tracks or other facilities of any railroad corporation at grade, or above or below grade and to determine, order, and prescribe the terms and conditions of installation and operation, maintenance, and protection of all such crossings which may be constructed including the watchman threat or the installation and regulation of lights, block, interlocking, or other system of signaling, safety appliance devices, or such other means or instrumentalities as may to the commission appear reasonable and necessary to the end, intent, and purpose that accidents may be prevented and the safety of the public promoted.

conceding that the condemnation action would have been better undertaken by Bair on his own behalf, Highways argues that it is Bair's agent because its memorandum of agreement with Bair is a contractual assignment to Highways of Bair's right to condemn a private way of necessity. Once the railroad crossing is condemned, Highways informs us that Bair will own it. Because the resulting ownership will be the same as if Bair himself had initiated the condemnation, Highways concludes that Article II, Section 14 authorizes it to bring this condemnation action.

The question before us, then, is whether Highways can condemn a private way of necessity pursuant to Article II, Section 14. The court of appeals analyzed that question by applying common law principles involving an implied way of necessity. Relying on the test set forth in *Wagner v. Fairlamb*, 151 Colo. 481, 379 P.2d 165, *cert. denied* 375 U.S. 879, 84 S.Ct. 149, 11 L.Ed.2d 110 (1963), the court of appeals concluded that Highways had not proved the existence of an implied way of necessity and, for that reason, the court reversed the trial court's condemnation award. The parties and the amicus agree that the court of appeals wrongly applied the test for a common law implied way of necessity to the condemnation of a private way of necessity under Colo. Const. Art. II, Sec. 14. We also agree.

In analyzing this issue, it is first necessary to distinguish the test for a common law implied way of necessity from the constitutional private way of necessity which is at issue here. The court of appeals apparently did not distinguish between the two ways of necessity and based its decision on an implied way of necessity at common law, as set forth in *Wagner*, 151 Colo. 481, 379 P.2d 165, even though Highways asserted its claim under the constitution. In *Wagner*, we listed the following three requirements of a way of necessity at common law: (1) the original ownership of

the entire tract of land was held by a single grantor prior to a division thereof; (2) the necessity existed at the time of the severance; and (3) the necessity for the particular right-of-way is great. 151 Colo. at 486, 379 P.2d at 168. The court of appeals applied the *Wagner* requirements and concluded that:

> [T]here is no support for the granting of a private way of necessity. There is nothing in the record to show unity of ownership prior to any division, nor is there evidence indicating that such an easement has ever existed. The record further shows that the property has always been accessible without a private way of necessity, and therefore, petitioner failed to establish that the necessity for the right of way was great.

*State Dep't of Highways*, 757 P.2d at 183.

The means for resolving access problems often involve well-established common law principles. However, when these common law principles do not establish legal access to particular landlocked parcels, Article II, Section 14 provides a remedy of last resort. *See Crystal Park Co. v. Morton*, 27 Colo. App. 74, 146 P. 566 (1915). Article II, Section 14 provides:

> Private property shall not be taken for private use unless by consent of the owner, except for private ways of necessity, and except for reservoirs, drains, flumes or ditches on or across the lands of others, for agricultural, mining, milling, domestic or sanitary purposes.[4]

Furthermore, Article II, Section 15 states that:

> Private property shall not be taken or damaged, for public or private use, without just compensation ... and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question. ...

---

**4.** The statutory counterpart to this constitutional provision is contained in section 38–1–102(3), 16A C.R.S. (1982), and states: "(3) Under the provisions of this section, private property may be taken for private use, for private ways of necessity, and for reservoirs, drains, flumes, or ditches on or across the lands of others for agricultural, mining, milling, domestic, or sanitary purposes."

We have interpreted the exceptions in Article II, Section 14 narrowly and have resolved any uncertainty against the one asserting the right to condemn. *Coquina Oil Corp. v. Harry Kourlis Ranch*, 643 P.2d 519, 522 (1982).

In *Crystal Park Co.*, 27 Colo.App. at 80, 146 P. at 569, the court differentiated the common law way of necessity from the constitutional right to condemn a way of necessity and determined that the framers of the Colorado Constitution intended to provide a different remedy from that which existed at common law. The court found that the "common law way of necessity is an easement founded upon an implied grant." On the other hand, a private way of necessity founded on constitutional principles exists because of necessity and not by reason of an implied grant, and furthermore, exists where the common law or other remedies do not provide a basis of access. *Id.* at 85, 146 P. at 570–71. In addition, a primary difference is the fact that just compensation must be paid to condemn a private way of necessity, but no compensation is due for an implied easement by way of necessity under common law. *Id.* at 80, 146 P. at 569.

We conclude that this case is not governed by the common law way of necessity as applied by the court of appeals, but rather is based on condemnation under Article II, Section 14.

### III.

■ Next we address whether Highways has the authority to condemn a private way of necessity under Article II, Section 14 on behalf of Bair. Private property may not be condemned in the absence of express or necessarily implied statutory condemnation authority. *Riverside Irrigation Dist. v. Lamont*, 194 Colo. 320, 572 P.2d 151 (1977); *Potashnik v. Public Service Co.*, 126 Colo. 98, 247 P.2d 137 (1952); *Board of County Comm'rs v. Intermountain Rural Electric Assoc.*, 655 P.2d 831 (Colo.1982); 1A *Nichols on Eminent Domain* § 3.1 (3d ed. 1985). In determining the scope of condemnation power pursuant to legislative enactment, we have adopted

the approach of strict construction. *Coquina*, 643 P.2d at 524. Thus, Highways must have the statutory authority to condemn a private way of necessity on the behalf of Bair.

The Colorado statute regarding private ways of necessity, section 38–1–102(3), 16A C.R.S. (1982), is identical to Article II, Section 14 and therefore does not provide guidance on who may condemn a private way of necessity or how the right may be exercised. However, we may look to other states' interpretations of like provisions in their own state constitutions. Article II, Section 14 of our state constitution was based on a similar provision in the Missouri State Constitution and also is almost identical to a provision of the Washington State Constitution. *Crystal Park Co.*, 27 Colo. App. at 85, 146 P. at 570–71 (in interpreting Article II, Section 14 of the Colorado Constitution, the court looked to comparable provisions in the Missouri and Washington Constitutions for guidance). Both the Washington and Missouri legislatures have passed statutes clarifying who may condemn private property for a private way of necessity. These state statutes require that one condemning a private way of necessity must be the owner of the landlocked property or one entitled to the beneficial use of the land. *See* V.A.M.S. § 228.340; RCW 8.24.010.

In *Brown v. McAnally*, 97 Wash.2d 360, 644 P.2d 1153 (1982), the Washington Supreme Court held that an owner of landlocked property could not condemn a private way of necessity for a private road connecting to a county road in order to transfer it to the county for use as a public road. In comparing condemnation for a private way of necessity and condemnation by the county for a public use, the court held:

> Clearly, the proof required under RCW 8.24.010 [for a private way of necessity] and under RCW 8.08.040 [condemnation of land by a county for public use] is incompatible; the former requires proof of a contemplated *private use* and the latter requires proof of a contemplated *public use*. Proof to support an action

under one statute necessarily precludes a successful action under the other. While both the landlocked owner and the county have the power to condemn property, the owner of landlocked property is only authorized to condemn land for his or her own needs and use, and is not authorized to condemn land for another or some other use.

*Brown*, 644 P.2d at 1161 (emphasis in original).

■ Although addressing a fact situation which is the reverse of the case at hand, the Washington Supreme Court's analysis is helpful. Here, Bair as the owner of landlocked property may attempt to condemn a private way of necessity under section 43–3–105 and Highways has express authority to condemn property for local service roads and for highway construction. However, we find no statute which authorizes Highways to stand in the shoes of Bair and condemn a private way of necessity.

In *Coquina*, 643 P.2d 519, we held that a federal oil and gas lessee could not assert the right to condemn private property for private use, although we agreed that neither Article II, Section 14, nor section 38–1–102(3), 16A C.R.S. (1982), establishes a particular class of persons who may condemn. *Coquina*, 643 P.2d at 522. In *Coquina*, we were concerned that allowing a lessee to condemn a right-of-way across a neighboring ranch would potentially expose the owners of the property to repeated litigation as "successive lessees attempt to secure a temporary right-of-way." *Id.* at 522. Thus, from a public policy standpoint it was more desirable for the owner, the federal government in that case, to initiate the condemnation action. We also noted that it was preferable that the fee owner of the landlocked property initiate the condemnation action. *Id.* at 523.

Highways claims that it has statutory authority to condemn the property pursuant to sections 43–1–208 and 43–1–210, 17 C.R.S. (1984). These statutes authorize condemnation of private property in connection with the construction of a highway. Furthermore, Highways argues that section 43–2–118 is a legislative grant of authority to condemn a private way:

The manner of laying out any private road from the land of any person so as to connect with any public road and of condemning the lands necessary therefor shall be the same as provided in this part 1, except that the petition in such cases need be signed by only such person and the damages which may accrue and the expense of opening such road shall be paid by such petitioner.

Highways asserts that this statute is a "delegation of the power of eminent domain to Highways" since it is included among statutes which discuss state, county, and city highways. Also, according to Highways, the use of the term "need be signed" is a permissive instruction in the statute which indicates a legislative intent to allow others to bring condemnation proceedings to acquire private ways. As such, Highways claims that it is authorized to condemn the crossing on behalf of Bair and to relinquish ownership of the crossing to Bair once it has been acquired.

The construction which Highways suggests for section 43–2–118 is strained and unpersuasive. It is a major question of public policy whether and under what circumstances a state agency may condemn private property for private use. We cannot conclude that the legislature impliedly intended to authorize Highways to take such action by adopting section 43–2–118.

We also reject Highways' interpretation of the other relevant statutes. Sections 43–1–208 and 43–1–210 allow condemnation of property desirable to alter a portion of a state highway; these sections pertain to the Department of Highways' authority to acquire and dispose of property for state highway purposes and further elaborate on its authority to acquire property by eminent domain. Also, section 43–3–106, 17 C.R.S. (1984), provides Highways with the authority to "purchase or condemn any right of access appertaining to any land abutting on a state highway or on a portion of a state highway when such right of access is disturbed or destroyed by the designation of a state highway." *See also Shaklee v. Board of County Comm'rs*, 176

Colo. 559, 491 P.2d 1366 (1971) (landowner's access to his property cannot substantially be interfered with without compensation). The statutes, however, do not expressly or implicitly authorize condemnation of a private way of necessity for property having no connection with the highway alteration.

In light of other states' interpretations of analogous constitutional provisions and the legal principle that private property may not be condemned in the absence of express or necessarily implied statutory authority, we find that Highways has no statutory authority which would allow it to condemn a private way of necessity under section 38–1–102(3) and Article II, Section 14. Accordingly, the judgment of the court of appeals is affirmed.