Nicole Renea **THOMPSON** and Sonya Ann Thompson, Petitioners,

v.

Helen E. **WHINNERY**, Respondent.

No. 93SC495.

Supreme Court of Colorado,
En Banc.

May 15, 1995.

Rehearing Denied June 5, 1995.

---

Mathis and Masters, P.C., David L. Masters, Montrose, for respondent.

Coleman, Jouflas & Williams, Gregory Jouflas, Joseph Coleman, Grand Junction, for petitioners.

Justice LOHR delivered the Opinion of the Court.

This case presents the issue of whether an implied easement of necessity was created across lands now owned by petitioners Nicole Renea Thompson and Sonya Ann Thompson for access to ten acres of land now owned by respondent Helen E. Whinnery (Whinnery) when a 194 acre parcel, of which the ten acres is a part, was severed by conveyance in 1938 from the adjoining lands of the Thompsons.[1] The ten acres is physically separated from the remainder of the 194 acre parcel by Elk Creek and the canyon through which it runs. The trial court determined that an implied easement of necessity was created across the Thompsons' lands when the 194 acre parcel was severed from those lands, and the Colorado Court of Appeals affirmed. *Whinnery v. Thompson*, 868 P.2d 1095 (Colo.App.1993). We conclude that because there was adequate access to the ten acres across the remainder of the 194 acre parcel to enable the ten acres to be used for the limited purposes for which it was conveyed in 1938, Whinnery failed to establish an implied easement of necessity. We therefore reverse the judgment of the court of appeals on that issue and remand the case to that court with directions to reverse the judgment of the trial court to the extent that it recognizes establishment of an implied easement of necessity.

---

1. As the context requires, the term "the Thompsons" will be used to designate either the petitioners, Nicole Renea Thompson and Sonya Ann Thompson, or, as here, the family members who were their predecessors in interest in ownership of the lands to which this opinion relates.

## I.

This dispute involves property that for many years was owned by members of the Thompson family and is located in the remote Powderhorn region of southwest Gunnison County, Colorado. In 1938, the Thompsons conveyed a 194 acre parcel of the property to Whinnery's predecessor in interest.[2] The Thompsons' remaining property adjoins the 194 acre parcel on the north and east. The parties and their predecessors have used their lands primarily to graze animals, to grow hay, and for recreation.

Elk Creek and its small, steep canyon divide the 194 acre tract into a ten acre northern parcel and a 184 acre southern parcel. Whinnery obtains access to the larger parcel by a road that is located on the property and leads to Colorado Highway 149. Whinnery has obtained access to the parcel north of Elk Creek either by fording the creek from her southern parcel or by use of a private dirt road located on the Thompsons' property.

In recent years, a survey established that the northern boundary of Whinnery's property is farther north than previously understood, with the result that the portion of the property north of Elk Creek is larger than previously thought and contains approximately ten acres. As a consequence, Whinnery pursued efforts to develop this ten acre parcel for sale as a residence site. The value of this land is between $40,000 and $50,000. The trial court found that the cost of constructing a proper road to bridge Elk Creek and connect the ten acres with the remainder of the 194 acre parcel would far exceed the value of the ten acres.[3]

In 1991, Whinnery[4] brought an action against the Thompsons in Gunnison County District Court seeking to establish an easement across the Thompsons' property for access to the ten acre parcel. Whinnery claimed the easement based on several alternative legal theories including easement of necessity. The Thompsons answered and counterclaimed, asserting title to most of the ten acre parcel by adverse possession. Prior to trial, Whinnery abandoned all theories for establishment of the claimed easement except the theory of easement of necessity. The case was tried to the court without a jury. Following the trial, the court issued written findings of fact and conclusions of law and judgment by which it determined that Whinnery had established her right to an easement of necessity and the Thompsons had failed in their effort to prove title by adverse possession.[5]

The Thompsons appealed. The court of appeals affirmed the rejection of the Thompsons' adverse possession claim and also affirmed the determination that Whinnery had established the right to an easement of necessity across the Thompsons' land for access to the ten acre parcel. The court of appeals agreed with the Thompsons, however, that the description of the location of the easement should be more precise and vacated the trial court's judgment in part and remanded the case to that court for further proceedings to identify the specific location of the easement. The Thompsons sought certiorari review, which we granted in order to resolve the following issue: "Did the court of appeals err in holding that an easement by way of necessity was created in 1938 at the time

2. More precisely, the conveyance was by a public trustee's deed in foreclosure of a lien created by the Thompsons.

3. As the court of appeals noted, expert testimony indicated "that the cost of building a road across the canyon would run from $60,000 to $100,000 and would include blasting out the canyon walls. The cost of filling the canyon was estimated at $95,000 to $145,000, while the cost of building a bridge across the canyon was determined to range between $150,000 to $500,000." *Whinnery*, 868 P.2d at 1098.

4. The case was brought by Helen E. Whinnery and her husband, Robert S. Whinnery. After Robert S. Whinnery died, Helen E. Whinnery continued the suit without objection by the defendants. For convenience, we refer to petitioner Helen E. Whinnery as the owner of the 194 acre parcel and the plaintiff in the litigation.

5. Initially, the court issued findings, conclusions, and judgment rejecting Whinnery's claim for an implied easement of necessity. Upon consideration of post-trial motions the court withdrew that original judgment and issued the findings, conclusions, and judgment referred to in the text of this opinion.

there was a division of title between the servient and dominant estates."[6]

## II.

An implied easement of necessity for access to land arises when the owner of a tract of land conveys part of that tract to another, leaving either the part conveyed or the part retained without access except over the other part. *Wagner v. Fairlamb*, 151 Colo. 481, 486, 379 P.2d 165, 168 (1963), *cert. denied*, 375 U.S. 879, 84 S.Ct. 149, 11 L.Ed.2d 110 (1963). In such circumstances an easement is implied because "the law assumes that no person intends to render property conveyed inaccessible for the purpose for which it was granted [or retained]." *Id.* at 487, 379 P.2d at 168–69. This assumed intent has its roots in considerations of public policy that militate against rendering a tract of land useless for lack of access. *See Collins v. Ketter*, 719 P.2d 731, 733 (Colo.App. 1986) (stating that "sound public policy dictates that land should not be rendered unfit for occupancy" and that "[t]here is a presumption, therefore, that whenever a party conveys property he conveys whatever is necessary for the beneficial use of that property") (citing *Martino v. Fleenor*, 148 Colo. 136, 365 P.2d 247 (1961)); *see also Restatement of Property* § 476 cmt. g (1944) ("The inference as to intention which is made is influenced largely by considerations of public policy in favor of land utilization."). *See generally* 7 James L. Bross et al., *Thompson on Real Property* § 60.03(b)(5)(i), at 431 (David A. Thomas ed., 1994); 3 Richard R. Powell, *Powell on Real Property* § 34.07, at 61–62 (1994).

To establish an implied easement of necessity for access to land, three requirements must be met: (1) there must be unity of ownership of the entire tract prior to division; (2) the necessity for the easement must exist at the time of severance; and (3) the necessity for the particular easement must be great.[7] *Wagner*, 151 Colo. at 486, 379 P.2d at 168; *State Dept. of Highways v. Denver and Rio Grande W.R.R. Co.*, 757 P.2d 181, 183 (Colo.App.1988), *aff'd*, 789 P.2d 1088 (Colo.1990). The burden of proving the existence of an implied easement of necessity is upon the person claiming the easement. *See Wagner*, 151 Colo. at 486–87, 379 P.2d at 168; *Denver and Rio Grande*, 757 P.2d at 183.

At issue in this case is only the establishment of an easement of necessity for access to the ten acre parcel of Whinnery's land lying north of Elk Creek. The 184 acre parcel south of Elk Creek has access to a state highway.

In applying the first requirement set forth in *Wagner* to the facts of the present case, the trial court found that unity of ownership existed in 1938, when both the 194 acre tract now owned by Whinnery and the Thompsons' property were owned by a common grantor. This finding is undisputed and is supported by uncontroverted evidence in the record. Therefore, Whinnery satisfied the first requirement of the *Wagner* test.

The second requirement—that the asserted necessity existed at the time of the severance—is also established by uncontroverted evidence. When the 194 acres was severed from the remainder of the Thompson property in 1938 there were only two means of access to the parcel north of Elk Creek. The first was over the dirt road crossing the property retained by the Thompson family. The second was by fording Elk Creek from that part of the 194 acre Whinnery property lying south of the creek. The difficulty of crossing Elk Creek was the basis of Whinnery's claim of necessity, and that difficulty existed at the time of the severance.

The third requirement is that the necessity for the easement must be great. In *Wagner*

---

6. We also granted certiorari to review two additional issues, concerning the scope and type of use of an easement of necessity. Because we hold that Whinnery failed to establish an easement of necessity, we do not reach the other issues.

7. We have stated that "[g]enerally implied easements have not been looked upon with favor by the courts." *Wagner*, 151 Colo. at 484, 379 P.2d at 167; *see LeSatz v. Deshotels*, 757 P.2d 1090, 1093 (Colo.App.1988). The requirement that the necessity for a particular easement must be great reflects the application of that principle in the context of easements of necessity.

we held that in evaluating whether an easement is necessary for access over difficult terrain we must determine whether there is "a practical inability to have access any other way than by a way of necessity." *Wagner*, 151 Colo. at 487, 379 P.2d at 168. Explaining further, we said that "the law assumes that no person intends to render property conveyed inaccessible for the purpose for which it was granted." *Id.* Inquiry is required, therefore, into the purpose for which the parcel north of Elk Creek was granted and the access necessary to effectuate that purpose.

■ Initially, it is noteworthy that the presence of access to the 184 acres south of Elk Creek does not preclude a determination that an easement of necessity was created for access to the ten acres north of the creek. When a tract of property is divided by a natural obstacle, as in the present case, the property owner may require separate points of access to the parcels on either side of the natural obstacle in order to obtain access to the entire tract and put it to its intended use. *See, e.g., Liles v. Wedding,* 84 Or.App. 350, 733 P.2d 952, 953–54 (1987) (recognizing an implied easement for a landowner over a neighbor's private road to obtain access to a portion of the landowner's parcel that was separated by a river from the remainder of the parcel, and limiting the scope of the easement to the use of the road at the time the landowner's parcel was separated from the neighbor's parcel by conveyance); *Miller v. Schmitz,* 80 Ill.App.3d 911, 36 Ill.Dec. 68, 70–71, 400 N.E.2d 488, 490–91 (1980) (recognizing the public policy in favor of full utilization of land and recognizing an easement by implication over land once owned in common with that of the landowner in order for the landowner to obtain access to a portion of his land that was separated from the remainder by an impassable creek); *see also* Michael A. DiSabatino, *Way of Necessity Where Only Part of Land Is Inaccessible,* 10 A.L.R.4th 500 (1981 & 1994 Supp.). Moreover, the purpose for which the property was conveyed

may be different for each parcel on either side of the natural obstacle.

The purpose for which the ten acre portion of the 194 acre tract was conveyed was very limited according to the sparse evidence appearing in the record. The parties' lands were used primarily to graze animals, to grow hay, and for recreation. The only evidence concerning the purpose for the conveyance of the ten acre parcel north of Elk Creek, however, was the testimony of Whinnery and her son Stan Whinnery. They testified that the only use the family had made of the ten acre parcel was for fishing, trapping beaver, and hunting. Although the Whinnerys used the dirt road across the Thompsons' land to reach the ten acre tract, the evidence was uncontroverted that the ten acre parcel was accessible from the 184 acre parcel by foot and on horseback. Whinnery testified that no improvements had ever been constructed on the ten acre parcel. There is no indication in the record that in 1938 the parties contemplated developing the ten acre parcel into something other than an area to fish, trap, and hunt or that access by crossing the canyon on horseback or on foot was not adequate for that purpose. Therefore, we conclude that Whinnery failed to satisfy her burden to show that access to the ten acre tract was not adequate for the purpose for which it was granted without the need for an easement over the Thompsons' property. *See LeSatz v. Deshotels,* 757 P.2d 1090, 1093 (Colo.App.1988) ("While absolute physical impossibility of reaching the alleged dominant estate is not a requisite, an easement by implication is not sanctioned if available alternatives offering reasonable means of ingress and egress exist."). Whinnery, in short, failed to present evidence adequate to establish "great necessity."

■ In reaching our holding, we recognize that the purpose for which property is conveyed may be considered to include uses the parties reasonably might have expected based on normal development of the ten acre parcel. *See Restatement of Property* § 484 cmt. b (1944).[8] However, nothing in the

---

8. Comment b to § 484 of the *Restatement of Property* discusses the *extent* of easements created by implication. It provides:

b. *Where created by implication.* The extent of an easement created by implication is to be inferred from the circumstances which exist at

record suggests that the parties contemplated or had reason to contemplate residential development on the ten acre tract at the time of the severance in 1938.[9]

### III.

We hold that the evidence does not support the conclusion that great necessity existed for an implied easement over the Thompsons' lands for access to the ten acre parcel of Whinnery's land north of Elk Creek when the 194 acre parcel was severed from the balance of the Thompson lands by conveyance in 1938. We therefore reverse the judgment of the Colorado Court of Appeals in part and remand the case to that court with directions to reverse the judgment of the trial court to the extent that it recognizes such an implied easement of necessity.

the time of the conveyance and give rise to the implication. Among these circumstances is the use which is being made of the dominant tenement at that time. Yet it does not follow that the use authorized is to be limited to such a use as was required by the dominant tenement at that time. It is to be measured rather by such uses as the parties might reasonably have expected from future uses of the dominant tenement. What the parties might reasonably have expected is to be ascertained from the circumstances existing at the time of the conveyance. It is to be assumed that they anticipated such uses as might reasonably be required by a normal development of the dominant tenement. It is not to be assumed, however, that they anticipated an abnormal development. Hence, the scope of an easement created by implication does not extend to uses required by such development.

A relevant application of these principles is set forth in illustration 4 to comment b:

> 4. A, the owner of Blackacre and Whiteacre, adjacent tracts of land, conveys Blackacre by deed to B. It has no access to a highway except over Whiteacre. At the date of the conveyance, Blackacre is unimproved pasture land, but it is later improved and cultivated as agricultural land and still later it is subdivided into city lots. The earlier development might reasonably have been anticipated by the grantor at the time of the conveyance; the later could not reasonably have been anticipated. A holding that the easement of way over Whiteacre created by implication upon the conveyance of Blackacre to B authorized a use for the benefit of Blackacre as agricultural land but not a use for its benefit as urban land is proper.

9. This conclusion is further reinforced by the fact, previously noted, that the parties did not understand that the parcel north of Elk Creek contained as much as ten acres until a recent survey disclosed that the northern boundary of Whinnery's land is farther north than previously understood. See *supra* at p. 539.