Coantha **CHILDERS, Plaintiff–Appellee,**

v.

**QUARTZ CREEK LAND COMPANY, a Colorado general partnership, Defendant–Appellant.**

**No. 96CA0075.**

Colorado Court of Appeals, Div. I.

Feb. 20, 1997.

As Modified on Denial of Rehearing May 1, 1997.

Certiorari Granted Nov. 10, 1997.

Duncan, Ostrander & Dingess, P.C., Donald M. Ostrander, Denver, for Plaintiff-Appellee.

Stevens, Littman & Biddison, LLC, Craig A. Weinberg, Andrew C. Littman, Boulder, for Defendant-Appellant.

Opinion by Judge METZGER.

In this private condemnation action brought by plaintiff, Coantha Childers (Childers), seeking to provide access to certain landlocked real property located in Gunnison County, Colorado, defendant, Quartz Creek Land Company (Quartz Creek), appeals the judgment granting plaintiff's request. We affirm and remand the cause with directions.

In 1988, Childers purchased approximately 160 acres of land from her grandfather's estate. The property had been in the Childers family for several decades and was adjacent to property owned by Quartz Creek. At the time of purchase, Childers was aware that the property was "landlocked" in that there was no readily available, deeded access to a public road, street, or highway.

In 1994, Childers filed a petition in condemnation for a private way of necessity under the authority of § 38–1–101, et seq., C.R.S. (1982 Repl.Vol. 16A) and Colo. Const. art. II, § 14, requesting a condemnation of a right-of-way over Quartz Creek's property to provide access to a county road. Quartz Creek moved to dismiss, and the trial court denied the motion, finding that Childers satisfied the requirements necessary for such a condemnation under § 38–1–101. Thereafter, a jury trial was held to determine the value of the condemned property rights. After the jury trial, Quartz Creek brought this appeal challenging, among other things, the constitutionality of § 38–1–102(3), C.R.S. (1982 Repl.Vol. 16A) as applied.

I.

Quartz Creek first contends that § 38–1–102(3) is unconstitutional as applied to the facts of this case.

Section 38–1–102(3) provides:

Under the provisions of this section, private property may be taken for private use, for private ways of necessity, and for reservoirs, drains, flumes, or ditches on or across the lands of others for agricultural, mining, milling, domestic, or sanitary purposes.

This statutory language is substantially similar to Colo. Const. art. II, § 14, which reads:

Private property shall not be taken for private use unless by consent of the owner, except for private ways of necessity, and except for reservoirs, drains, flumes or ditches on or across the lands of others, for agricultural, mining, milling, domestic or sanitary purposes.

*See Coquina Oil Corp. v. Harry Kourlis Ranch,* 643 P.2d 519 (Colo.1982) (fn. 2).

■ Quartz Creek's chief contention is that the Colorado constitutional provision requires the consent of a burdened property owner except for private ways of necessity used exclusively for agricultural, mining, milling, domestic, or sanitary purposes. Quartz Creek contended at trial that Childers' plans to subdivide the landlocked property into four residential lots does not meet any of the underlying constitutional criteria and, therefore, the trial court erred in applying the legislative enactment of this constitutional provision in granting Childers the private way of necessity in dispute.

Specifically, Quartz Creek argues that the statute may be read to permit a private way of necessity for any purpose and is in direct contradiction to the Colorado Constitution which, according to Quartz Creek's interpretation, limits private ways of necessity to agricultural, mining, milling, domestic, or sanitary purposes only. We disagree.

The decision in *Crystal Park Co. v. Morton*, 27 Colo.App. 74, 146 P. 566 (1915) interpreted the constitutional provision and the relevant statutory provisions in effect at that time. The *Crystal Park* court engaged in a detailed analysis of the legislative history of the constitutional provision in order to determine whether a private way of necessity could be granted for any purpose or whether such action could only be taken for the purposes enumerated in the constitution.

Relying on the natural import of the language used, the court found that the writers of the Colorado Constitution attached the limitation of necessity to the taking of private property for private roadways while at the same time refusing to limit the taking of private property for reservoirs, ditches, agricultural uses, etc. The court specifically stated: "We think that the Legislature, in enacting that section, [concerning private condemnation] did not have in contemplation a road used only in connection with the pursuit of agricultural, mining, milling, or . . . ." *Crystal Park Co. v. Morton, supra,* 27 Colo. App. at 86, 146 P. at 571.

Quartz Creek places great emphasis on the fact that the *Crystal Park* court reviewed constitutional language which did not contain a comma after the word "others" and that this anomaly significantly altered the court's analysis. However, a thorough reading of the *Crystal Park* decision shows that the court did more than a cursory grammatical review of the constitutional provision, and conducted an extensive analysis of the legislative and constitutional convention history.

Moreover, the *Crystal Park* court's interpretation of this constitutional language has been reaffirmed in *West v. Hinksmon,* 857 P.2d 483 (Colo.App.1992) (private way of necessity includes ways for reasonable and practical access to property otherwise isolated); *Bear Creek Development Corp. v. Dyer,* 790 P.2d 897 (Colo.App.1990) (private way of necessity granted for access to parcel used for operation of telecommunications tower).

Consequently, we decline to reconsider the *Crystal Park* holding and affirm the trial court's application of § 38–1–102(3).

We note, however, that, pursuant to the decision in *Bear Creek Development Corp. v. The Genesee Foundation,* 919 P.2d 948 (Colo. App. 1996), the easement should reflect the potential for termination of the way of necessity if and when another access route is established to serve the property interests that exist at that time. Thus, we remand the cause for an appropriate amendment to the judgement.

## II.

Quartz Creek next contends that Childers' claim for private condemnation was barred by the statute of limitations. We disagree.

Quartz Creek bases its argument on § 38–41–101(1), C.R.S. (1982 Repl.Vol. 16A), commonly known as the "adverse possession statute," which states:

> No person shall commence or maintain an action . . . to enforce or establish any right or interest of or to real property or make an entry thereon unless commenced within eighteen years after the right to bring such action or make such entry has first accrued. . . .

■ Essentially, Quartz Creek asserts that Childers, and her predecessors in interest, are barred from bringing the private condemnation claim because they have had

knowledge for more than 18 years that the property was "landlocked." We are not persuaded.

Generally, the limitation on actions set forth in the adverse possession statute may be "asserted either affirmatively or by way of defense and may be used in any action as a source of or as a means to establish title or the right of possession or as an aid or explanation of title." Section 38–41–113, C.R.S. (1982 Repl.Vol. 16A).

 When §§ 38–41–101(1) and 38–41–113 are read together, it becomes clear that the time periods contemplated by the adverse possession statute may be used either negatively to defeat an adverse possession claim or positively to assert title to property which has been held for the applicable period. The adverse possession statute allows for the establishment of a property right but, once that right has been established, the statute does not limit the exercise of that right. Therefore, an individual who has held property adversely for more than 18 years may still bring an action to perfect title to that property after the statutory period has passed. Likewise, landowners have an existing claim of right to bring a condemnation action as long as they hold title to the benefitted property. *See Colorado Mountain Properties, Inc. v. Heineman*, 860 P.2d 1388 (Colo.App. 1993) (declining to award damages based on delay in bringing condemnation action); *see also Wagner v. Fairlamb*, 151 Colo. 481, 379 P.2d 165 (1963) (concluding that a landowner's right to enforce a private way of necessity over property previously held under unity of title could not be extinguished by laches).

Finally, Quartz Creek's interpretation of the adverse possession statute would lead to the absurd result of landlocking property in perpetuity if the initial owner of such parcel does not bring a condemnation action within the statutory period. Such a result is contrary to the public policy of the state.

### III.

Finally, Quartz Creek contends the trial court erred in permitting Childers to amend the condemnation petition on the eve of trial. After a review of the record, we disagree.

The record clearly shows that Childers' amendment to the petition significantly improved Quartz Creek's rights under the easement over those encompassed in the original condemnation petition and that such changes did not adversely affect any valuation placed on the condemned property.

The judgement is affirmed and the cause remanded for amendment of the judgement consistent with the views expressed in this opinion.

NEY and CASEBOLT, JJ., concur.