The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 17, 2018

## 2018COA71

**No. 17CA0303, State of Colorado v. Robert J. Hopp and Associates, LLC — Bankruptcy — Attorney Fees — Colorado Consumer Protection Act — Colorado Fair Debt Collection Practices Act**

A division of the court of appeals considers whether the trial court erred when it imposed an award of attorney fees and costs against a defendant who had filed for bankruptcy and received a bankruptcy discharge before the underlying case in the trial court was filed. Defendant argues that the trial court was precluded from doing so by Bankruptcy Code § 727, which prohibits any attempt to collect from the debtor a debt that has been discharged, because the bankruptcy discharge applied to any claim for attorney fees and costs that could have been fairly or reasonably contemplated during the bankruptcy case. 11 U.S.C. § 727 (2012).

Adopting the rationale set forth in *In re Jensen*, 395 B.R. 472, 480 (Bankr. D. Colo. 2008), the division concludes that, because the attorney fees award in this case is a civil penalty imposed under the Colorado Consumer Protection Act, it is not dischargeable under 11 U.S.C. § 523(a)(7) (2012).  Thus, the division concludes that the trial court did not err when it awarded attorney fees and costs against defendant.

Court of Appeals No. 17CA0303
City and County of Denver District Court No. 14CV34780
Honorable Shelley I. Gilman, Judge

State of Colorado, ex rel. Cynthia H. Coffman, Attorney General for the State of Colorado; and Julie Ann Meade, Administrator, Uniform Consumer Credit Code,

Plaintiffs-Appellees and Cross-Appellants,

v.

Robert J. Hopp & Associates, LLC; The Hopp Law Firm, LLC; National Title, LLC, d/b/a Horizon National Title insurance, LLC; First National Title Residential, LLC; Safehaus Holdings Group, LLC; Lori L. Hopp; and Robert J. Hopp,

Defendants-Appellants and Cross-Appellees,

ORDER AFFIRMED

Division I
Opinion by JUDGE ROTHENBERG*
Taubman and Harris, JJ., concur

Announced May 17, 2018

Cynthia H. Coffman, Attorney General, Jennifer H. Hunt, First Assistant Attorney General, Erik R. Neusch, Senior Assistant Attorney General, Rebecca M. Taylor, Mark L. Boehmer, Assistant Attorneys General, Denver, Colorado, for Plaintiffs-Appellees and Cross-Appellants

Richards Carrington, LLC, Christopher P. Carrington, Ruth M. Moore, Denver, Colorado, for Defendants-Appellants and Cross-Appellees

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1    Plaintiffs, the State of Colorado, ex rel. Cynthia H. Coffman, Attorney General for the State of Colorado; and Julie Ann Meade, Administrator, Uniform Consumer Credit Code, brought a civil law enforcement action against defendants, foreclosure lawyer Robert J. Hopp; Hopp's wife, Lori L. Hopp; Hopp's law firms, Robert J. Hopp & Associates, LLC and The Hopp Law Firm, LLC (collectively, the law firms); as well as Hopp's affiliated title companies, National Title, LLC, d/b/a Horizon National Title Insurance, LLC, and First National Title Residential, LLC; and Safehaus Holdings Group, LLC, a company owned by Hopp and Lori Hopp, which, through its subsidiary, provided accounting and bookkeeping services for the law firms and title companies.  The State alleged that Hopp, the law firms, and their affiliated companies violated the Colorado Consumer Protection Act (CCPA) and the Colorado Fair Debt Collection Practices Act (CFDCPA) by billing its mortgage servicer clients title insurance premium charges for foreclosure commitments when those full costs were not actually incurred, despite knowing that these fraudulent costs would be assessed against Colorado homeowners in foreclosure.  The district court agreed with plaintiffs and entered judgment in their favor, except it

1

concluded there was insufficient evidence to find Lori Hopp personally liable for any alleged misconduct.

¶ 2     Defendants now appeal the district court's award of plaintiffs' attorney fees and costs.  Lori Hopp further appeals the district court's denial of her request for her attorney fees.

¶ 3     We affirm the district court's order.

## I.     Attorney Fees Orders

¶ 4     The trial court awarded plaintiffs most of their reasonable attorney fees and costs incurred in bringing the enforcement action under the CCPA and CFDCPA.  *See* § 5-16-133, C.R.S. 2017; § 6-1-113(4), C.R.S. 2017.  The trial court's order awarding fees cites to the former location of the CFDCPA, section 12-14-135, C.R.S. 2014.  The CFDCPA was repealed and replaced in 2017 and section 12-14-135 was replaced by section 5-16-133, C.R.S. 2017.  Plaintiffs requested attorney fees in the amount of $933,277 and $35,648 in costs.  The trial court made numerous reductions to plaintiffs' requested award:

- The court concluded it was unreasonable to employ more than two attorneys and a paralegal at trial.  It declined to award fees for any fees requested for staffing at trial

exceeding that level.  It subtracted those amounts from the amount requested by plaintiffs, resulting in a lodestar amount of $903,106.

- Considering the factors set forth in Colo. RPC 1.5, the trial court observed that plaintiffs recovered significantly less than they sought at the outset at trial.  The court also noted its concern that plaintiffs did not realize that a substantial portion of penalties imposed under the FDCPA were not available until after trial.  Thus, the court reduced the lodestar amount by twenty-five percent and awarded $677,329.50 for attorney fees.

- Defendants challenged plaintiffs' request for costs for deposing Lori Hopp and Brian Howard.  Plaintiffs did not respond to defendants' argument; therefore, the court reduced the costs award to $33,685.97.

¶ 5    Lori Hopp requested her attorney fees and costs, arguing that plaintiffs' action against her was substantially groundless under sections 13-17-101 to -106, C.R.S. 2017.  She argued that, alternatively, C.R.C.P. 11(a) required imposing a sanction against plaintiffs by way of awarding her attorney fees.  The court denied

her motion, concluding that, even though the state did not ultimately prove the CCPA claim against her, it was not groundless, nor were sanctions required against plaintiffs under C.R.C.P. 11(a).

## II.    Underlying Judgment

¶ 6    Defendants contend that, in the event the underlying judgment against them is reversed on appeal, the award of fees and costs against them should also be reversed because it depends on the validity of the underlying judgment on the merits.  Because we affirm the underlying judgment in *State v. Hopp*, 2018 COA 69, announced today, reversal of the attorney fees award is not required on that basis.

## III.    Bankruptcy

¶ 7    Hopp contends the trial court erred when it imposed an award of attorney fees and costs against him because it was precluded from doing so by his discharge of debts in bankruptcy.  We disagree.

### A.    Preservation

¶ 8    Hopp filed for bankruptcy on January 25, 2013, and obtained a discharge on February 10, 2014.  Plaintiffs' enforcement action was filed ten months later, on December 19, 2014.  Plaintiffs

contend Hopp failed to preserve the issue of the effect of his bankruptcy discharge in the trial court because he raised this issue "for the first and only time" in his C.R.C.P. 59 motion after trial. Plaintiffs further argue that a C.R.C.P. 59 motion, which contemplates amending a judgment or seeking a new trial, was not the proper procedural avenue for raising a bankruptcy discharge.

¶ 9     Hopp argues that he preserved his bankruptcy argument at numerous points in the proceedings. First, Hopp contends that he asserted in his answer to plaintiffs' complaint that his bankruptcy discharge barred, at least in part, some of plaintiffs' claims against him. He did not provide any further details about his bankruptcy in the answer. After trial, in his C.R.C.P. 59 motion to amend the court's findings and conclusions, Hopp argued that his bankruptcy discharge precluded the trial court's award of attorney fees against him because they were awarded to compensate the state for its actual pecuniary loss. The trial court declined to address this argument in the context of Hopp's C.R.C.P. 59 motion because it held Hopp had presented no evidence of his bankruptcy at trial. Hopp does not dispute the trial court's finding that he presented no evidence of his bankruptcy during the trial.

¶ 10 After plaintiffs submitted affidavits of attorney fees and costs, Hopp argued that the trial court, as part of its "punitive award" of attorney fees, was required to consider his bankruptcy in the context of his ability to pay. In light of his bankruptcy, Hopp alleged he was unable to pay the underlying judgment of penalties or plaintiffs' requested attorney fees.

¶ 11 Even assuming that Hopp properly preserved the consideration of the effect of his bankruptcy discharge on any attorney fees award in the trial court, we reject Hopp's arguments on the merits.

## B. Prepetition Liability

¶ 12 Hopp argues that the district court was precluded from awarding fees and costs against him by Bankruptcy Code § 727, which prohibits any attempt to collect from the debtor a debt that has been discharged. 11 U.S.C. § 727 (2012). He contends that the bankruptcy discharge applies to any claim for attorney fees and costs that could have been fairly or reasonably contemplated during the bankruptcy case. We are not persuaded.

¶ 13 Bankruptcy Code § 524(a)(1) voids any judgment at any time obtained for a determination of a personal liability of the debtor for

a debt discharged, as relevant here, under § 727, 11 U.S.C.
§ 524(a)(1) (2012).  A debt is not dischargeable, however, for "a fine,
penalty, or forfeiture payable to and for the benefit of a
governmental unit, and is not compensation for actual pecuniary
loss, other than a tax penalty."  11 U.S.C. § 523(a)(7) (2012).  The
fine, penalty, or forfeiture may be criminal or civil in nature.  *In re
Jensen*, 395 B.R. 472, 480 (Bankr. D. Colo. 2008).  We review
whether a particular debt meets the elements of § 523(a)(7), which
is a question of law, de novo.  *Id.*

¶ 14     First, Hopp argues that, under *In re Castellino Villas, A. K. F.
LLC*, 836 F.3d 1028 (9th Cir. 2016), the attorney fees award
constitutes a prepetition debt which was fairly contemplatable prior
to the bankruptcy discharge, and therefore is subject to the
discharge.  In *Castellino Villas*, the Ninth Circuit reasoned as
follows:

> When parties engage in prepetition litigation
> that could lead to an award of attorneys' fees,
> they may fairly contemplate that the prevailing
> party will be awarded those fees.  Therefore, a
> creditor's contingent claim to such fees is
> discharged in bankruptcy, even if some fees
> are incurred post-petition.  But when the
> prepetition litigation is resolved in bankruptcy
> so that any claim (including a contingent claim

7

for attorneys' fees) against the debtor would be discharged, we cannot say that the debtor's affirmative action to commence what amounts to "a whole new course of litigation," was in the fair contemplation of the parties when the debtor filed a bankruptcy petition. Rather, the debtor's decision to eschew the fresh start provided by bankruptcy and engage in new litigation is more akin to post-petition conduct that, by definition, was not in the fair contemplation of the parties prepetition.

*Id.* at 1035-36 (quoting *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 534 (9th Cir. 1998)).

¶ 15  *Castellino Villas* is inapposite here. The claims underlying the attorney fees award in *Castellino Villas* arose out of dischargeable debts. That is not true in this case. Hopp concedes that the award of penalties under the CCPA and CFDCPA is nondischargeable. The United States Bankruptcy Court for the District of Colorado has held that a civil penalty imposed under the CCPA is a nondischargeable penalty within the meaning of § 523(a)(7). *Jensen*, 395 B.R. at 482. Federal courts are divided on the issue of whether an award of attorney fees and costs may be held nondischargeable under § 523(a)(7). However, the bankruptcy courts look to state law to reach this determination. *Id.* at 487.

8

¶ 16     The Bankruptcy Court for the District of Colorado has considered the CCPA's attorney fees provision and noted that Colorado cases hold it serves both punitive and deterrent purposes. *Id.* (citing *Hall v. Walter*, 969 P.2d 224, 231 (Colo. 1998)).  The fact that such an award also serves to enable enforcement by defraying the government's expenses did not change the primary purpose of the provision.  *Id.* at 487-88.  Accordingly, the Bankruptcy Court concluded that an award of attorney fees made under the CCPA's mandatory provision was sufficiently penal to constitute a "fine, penalty or forfeiture" under § 523(a)(7) and was not dischargeable. *Id.* at 488.  We are persuaded by the Bankruptcy Court's interpretation of the CCPA's attorney fees provision and apply it here.

¶ 17     We further note that there is no reason to believe that the subsections of the CFDCPA allowing an award of attorney fees and costs payable to the administrator do not serve the same penal purposes as the CCPA.  The CFDCPA serves a similar purpose as the CCPA, namely consumer protection.  *See Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 773 (Colo. 2008) (The FDCPA has the "remedial purpose of protecting consumers against

9

debt collection practices that take advantage of gullible, unwary, trustful, or cowed persons who receive a debt collection communication."). Thus, we conclude that the trial court's attorney fees awards made under the CCPA and the CFDCPA are not dischargeable, and we decline to order that they be vacated as void under 11 U.S.C. § 524.

### IV. Attorney Fees for Unpursued or Unsuccessful Claims

¶ 18 Defendants contend the trial court erred when it failed to reduce plaintiffs' attorney fees award by the amount of any fees incurred for their unpursued and unsuccessful claims. We disagree.

¶ 19 "We review the reasonableness of a trial court's award of attorney fees for an abuse of discretion. The determination of reasonableness of attorney fees is a question of fact for the trial court, and its ruling will not be disturbed on review unless patently erroneous and unsupported by the evidence." *Payan v. Nash Finch Co.*, 2012 COA 135M, ¶ 16 (citation omitted).

¶ 20 Where a plaintiff brings multiple claims, but is only successful on some claims, we apply a method of claim segregation to determine to what extent an award of attorney fees can be awarded

10

under a fee-shifting statute.  *See Rocky Mountain Festivals, Inc. v. Parsons Corp.*, 242 P.3d 1067, 1073 (Colo. 2010).  Where a plaintiff brought multiple claims involving a common core of facts or based on related legal theories, counsel's work on an individual claim could not be distinguished from work on the entirety of the case.  *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).  Therefore, the court concluded that reducing the fee award for work on unsuccessful claims would be inappropriate.  *Id.*  However, where a plaintiff brought distinctly different claims for relief based on different facts and legal theories, and "the litigation could be justly conceived as a 'series of discrete claims' that had been 'raised in separate lawsuits,'" an award of fees only for the plaintiff's successful claims would be both practicable and appropriate to effect the purpose of the fee-shifting statute.  *Id.* (quoting *Hensley*, 461 U.S. at 434-35).

¶ 21    Defendants objected to portions of plaintiffs' attorney fee request.  Defendants argued that plaintiffs failed to subtract from their request fees incurred in the pursuit of the following claims:

- The claim alleging Hopp and the law firms billed incorrectly for foreclosure commitments that did not

result in title policies through LSI Default Title and Closing, also known as LSI Title Agency, which was unsuccessful at trial.

- The claim alleging defendants misrepresented a fifteen dollar "filing cost" in bids and cure statements, which the trial court dismissed at summary judgment.

- The claim, which plaintiffs withdrew prior to trial, that the law firms misrepresented $275 as a title search report fee on its files from servicer Fannie Mae.

- The claim, which was also withdrawn prior to trial, that the law firms charged a standard C.R.C.P. 120 filing fee on foreclosure files for files even when the client was exempt from court filing costs.

¶ 22    In its order, the trial court ruled as follows:

> The unpursued and unsuccessful claims and the successful claims involved a common core of facts and were based on related legal theories. Since the legal work on the unpursued and unsuccessful claims could not be distinguished from the work done on the whole of litigation, a reduction of the fee would be inappropriate. . . . Moreover, these unpursued and unsuccessful claims represent a small fraction of the case.

We agree with the trial court's reasoning. Plaintiffs' claims involved a common core of facts: namely, that the law firms submitted unlawful and inflated charges for costs paid by homeowners. All of plaintiffs' claims were brought under the same legal theories, applying provisions of the CCPA and CFDCPA. Even though the unsuccessful and unpursued claims alleged different instances of misrepresentation, plaintiffs' theory on each claim was similar — namely, that Hopp and the law firms, with the cooperation of their affiliated title firms, engaged in a general practice in their foreclosure work of billing loan servicers (and accordingly, homeowners in default) for certain costs that were not actually incurred.

¶ 23    On the LSI claim, which proceeded to trial, plaintiffs alleged that Hopp and the law firms engaged in the same kind of misrepresentation with foreclosure commitment billing as it alleged in the claims in which it prevailed. The only difference between this claim and the successful claims was that, in the acts underlying the LSI claim, plaintiffs alleged that Hopp and the law firms ordered title commitments through LSI, rather than through its own affiliated title companies.

¶ 24 As for the claims withdrawn prior to trial, plaintiffs alleged that defendants similarly misrepresented other fees which they were not authorized to collect. Plaintiffs alleged that defendants routinely misrepresented the cost of a Fannie Mae title search report by always charging clients the maximum cost allowed by Fannie Mae, even though the routine market rate for the product was less than half that amount. Plaintiffs further alleged that defendants charged clients filing fees for standard Rule 120 cases, even when the client for whom the law firm filed the motion to authorize sale was exempt from filing costs by the state. Both of these claims were based on plaintiffs' theory that defendants, as a routine practice in their foreclosure work, billed their loan servicer clients (and, accordingly, homeowners in default) for costs that were not actually incurred. The only difference between the unpursued claims and the successful claims was the specific category of the allegedly fraudulent costs being billed.

¶ 25 Accordingly, the trial court's decision to decline to reduce the attorney fees award on the basis of claim segregation was not patently erroneous or unsupported by the evidence presented at

14

trial. We conclude the trial court did not abuse its discretion. *See Payan*, ¶ 16.

## V. Lori Hopp's Fees Request

¶ 26 Lori Hopp contends the trial court erred in rejecting her argument that she was entitled to her attorney fees and costs under sections 13-17-101 to -106 for defending against plaintiffs' eventually unsuccessful claims against her. We disagree.

¶ 27 We review a trial court's decision whether to award attorney fees under section 13-17-102, C.R.S. 2017, for an abuse of discretion. *Anderson v. Pursell*, 244 P.3d 1188, 1193 (Colo. 2010). "A trial court abuses its discretion if its decision is 'manifestly arbitrary, unreasonable, or unfair.'" *Id.* at 1194 (quoting *Colo. Nat'l Bank of Denver v. Friedman*, 846 P.2d 159, 167 (Colo. 1993)).

¶ 28 A trial court is authorized to award "reasonable attorney fees against any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification." § 13-17-102(2). An action lacks substantial justification if it is "substantially frivolous, substantially groundless, or substantially vexatious." § 13-17-102(4).

¶ 29    Lori Hopp does not contend the claims against her were substantially vexatious or frivolous; rather, she argues that the claims were substantially groundless. A claim is groundless "if the allegations in the complaint, while sufficient to survive a motion to dismiss for failure to state a claim, are not supported by any credible evidence at trial." *Stepanek v. Delta Cty.*, 940 P.2d 364, 369 (Colo. 1997). A claim is also considered groundless if there is no evidence supporting an essential element of a claim, even if there is evidence supporting other elements. *See Ranta Constr., Inc. v. Anderson*, 190 P.3d 835, 847 (Colo. App. 2008). "A losing position is not necessarily groundless for purposes of awarding attorney fees, nor is a claim groundless solely because the plaintiff failed to establish a prima facie case if there is some credible evidence to support the claim." *In re Estate of Owens*, 2017 COA 53, ¶ 50.

¶ 30    When granting an award of fees under section 13-17-102(2), the trial court must consider the factors set forth in section 13-17-103, C.R.S. 2017, which "give context and content" to the court's determination whether a fee award is appropriate. *Munoz v. Measner*, 247 P.3d 1031, 1034 (Colo. 2011). These include, as relevant here,

(a) [t]he extent of any effort made to determine the validity of any action or claim before [it] was asserted;
(b) [t]he extent of any effort made after the commencement of an action to reduce the number of claims or defenses being asserted or to dismiss claims or defenses found not to be valid within an action;
(c) [t]he availability of facts to assist a party in determining the validity of a claim or defense;

. . .

(f) [w]hether . . . issues of fact determinative of the validity of a party's claim or defense were reasonably in conflict; [and]
(g) [t]he extent to which the party prevailed with respect to the amount of and number of claims in controversy.

§ 13-17-103(1). A trial court is required to discuss only those factors enumerated in section 13-17-103 that are relevant to the case, and need not make specific findings with respect to factors that are not specifically at issue. *Anderson*, 244 P.3d at 1197.

¶ 31    While the trial court concluded plaintiffs failed to prove their CCPA claim against Lori Hopp by a preponderance of the evidence, the court explicitly noted that it "did *not* find that the State failed to present any credible evidence in support of the claim." (Emphasis added.) It further ruled:

> The State's claim against Ms. Hopp arose from a rational argument based on credible evidence and law; namely, as the 85 percent owner of National Title and an active participant in the entities' businesses through her bookkeeping and accounting services at SafeHaus Financial, Ms. Hopp approved, directed, participated, or cooperated in its conduct. Further, the longtime executive vice president of National Title identified Ms. Hopp as a person of authority.

In its order, the court cited case law indicating that a losing position is not necessarily groundless for the purpose of awarding attorney fees.

¶ 32    The trial court considered whether plaintiffs contemplated the validity of their claims before the commencement of the action, and whether their claim was rational in light of the facts available at that time. Lori Hopp's position within the companies affiliated with Hopp and his law firms, as well as her hands-on role in bookkeeping and accounting for those entities raised the question of her knowledge of the extent of the misrepresentations made in billing in foreclosure files that were the basis of all claims in this action. Lori Hopp's knowledge determined, in large part, her liability under the CCPA. *See Crowe v. Tull*, 126 P.3d 196, 204 (Colo. 2006) (to establish a violation of the CCPA, a plaintiff must

show the defendant knowingly engaged in a deceptive trade practice). The extent of Lori Hopp's knowledge was a question of fact which plaintiffs could only fully develop through the presentation of evidence at trial. Thus, the trial court's decision that plaintiffs' CCPA claim against Lori Hopp was not substantially groundless was not manifestly arbitrary, unreasonable, or unfair.

¶ 33 Accordingly, the trial court did not abuse its discretion when it declined to award Lori Hopp's attorney fees.

## VI. Conclusion

¶ 34 The order is affirmed.

JUDGE TAUBMAN and JUDGE HARRIS concur.