23CA1815 Lichina Trust v Gjovig Trust 03-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1815
El Paso County District Court No. 21CV31417
Honorable Thomas K. Kane, Judge

---

Lichina Revocable Living Trust,

Plaintiff-Appellant and Cross-Appellee,

v.

Elinore H. Gjovig Revocable Trust,

Defendant-Appellee and Cross-Appellant.

---

JUDGMENT REVERSED, ORDER AFFIRMED,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE KUHN
Harris and Tow, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 20, 2025

---

Messner Reeves LLP, Brenda L. Bartels, Colorado Springs, Colorado, for
Plaintiff-Appellant and Cross-Appellee

Sparks Willson, P.C., Scott W. Johnson, Julie B. Petersen, Colorado Springs,
Colorado, for Defendant-Appellee and Cross-Appellant

¶ 1     In this action to determine the existence of an implied easement of necessity, plaintiff, the Lichina Revocable Living Trust (the Lichina Trust), appeals the trial court's judgment entered following a bench trial in favor of defendant, the Elinore H. Gjovig Revocable Trust (the Gjovig Trust).  On cross-appeal, the Gjovig Trust challenges the court's order denying its request for an award of attorney fees.  We affirm the attorney fee order but reverse the judgment and remand the case to the trial court for further proceedings consistent with this opinion.

## I.     Background

¶ 2     We draw the following factual background from the record and the trial court's "Findings of Fact, Conclusions of Law, and Judgment," entered after the bench trial.

¶ 3     The dispute between the parties concerns neighboring parcels of land in Cascade, located in El Paso County.  In 1948, the Cascade Town Company was the common owner of the land depicted on the map below, labeled as Figure 1.

1



*Figure 1*

In November of that year, one of the company's owners, Frank Cusack, signed a deed conveying Parcel 2 to himself.  Parcels 1 and 3 remained with the Cascade Town Company.  A few weeks later, the Cascade Town Company transferred Parcel 1 to Leonard and Carrie Dittemore.  The Cascade Town Company retained Parcel 3 until 1966, when the company's other owner, Charles Cusack, deeded that property to himself.[1]  Parcel 3 was later acquired by John Barnes.

¶ 4      In 1969, Elinore H. Gjovig and her husband Gordon (who is now deceased) acquired Parcel 1 from the Dittemores' successor in interest.  Nine years later, the Gjovigs also acquired a portion of Parcel 2, which at the time was owned by Frank Cusack's wife,

---

[1] Charles Cusack was the brother of Frank Cusack.

Helen. And in late 2003, Thomas (Tom) Lichina and his wife, Mary, acquired the remainder of Parcel 2 from the estate of the Cusacks' daughter to whom Helen Cusack had conveyed the property in 1985. Gjovig and the Lichinas eventually transferred the title to their respective parcels to the trusts they each had formed.

¶ 5    As a result of these conveyances, the Gjovig Trust and the Lichina Trust own parcels of land marked as the "Gjovig Home" and the "Lichina Lot," respectively, on the map below that is labeled as Figure 2.



*Figure 2*

¶ 6     As shown in Figure 2, the Lichina Trust's lot lacks access to a public road, including U.S. Highway 24, which runs to the west of it. The parcel is landlocked and is bordered by the Lichinas' other property (which contains a residence and rental property) to the east, property owned by third parties to the northeast and south, and the Gjovig Trust's property to the west and northwest. Lichina testified at trial that due to the parcel's location and difficult terrain, he and his wife could access it only by a road that runs across the Gjovig Trust's property. That access road — marked as a dashed line in Figure 2 — enters the Gjovig Trust's property at its farthest northwestern boundary, traverses east almost to its northeastern corner, turns south, and connects with the northern portion of the Lichina Trust's undeveloped lot.

¶ 7     The Lichinas had used the access road to get to the parcel before and after purchasing it; however, Gjovig later blocked access to the road with a gate and refused to grant them an easement across her land. The Lichina Trust filed this lawsuit in September 2021, asserting a claim for an implied easement of necessity over the access road. It amended its complaint roughly two months later to assert a claim for a prescriptive easement, which it pleaded in the

4

alternative. The court later granted the Gjovig Trust's motion for partial summary judgment and dismissed the prescriptive easement claim.

¶ 8 After a half-day trial to the bench, the trial court issued its findings of fact and conclusions of law. The court determined that the Lichina Trust failed to establish the existence of an implied easement of necessity over the access road. The Gjovig Trust then filed a timely motion seeking an award of $100,826.50 in attorney fees and $4,213.48 in costs. The court awarded the requested costs but denied the attorney fee request.

## II. Analysis

¶ 9 On appeal, the Lichina Trust contends that the trial court erred by concluding that it had no easement of necessity over the road allowing access to its land. On cross-appeal, the Gjovig Trust contends that the court erred by denying its motion for an award of attorney fees incurred in defending against this suit. We agree with the Lichina Trust in part and consequently reverse the trial court's judgment denying the trust's easement of necessity claim. But because we disagree with the Gjovig Trust's challenge, we affirm the court's attorney fee order.

### A. Implied Easement of Necessity

¶ 10 The Lichina Trust argues that the trial court erred by determining that it wasn't entitled to an implied easement of necessity over the access road that runs across the Gjovig Trust's property. Specifically, the Lichina Trust argues that the trial court erred by (1) finding that the Lichina Trust presented no evidence of the purpose for which its parcel was originally conveyed; (2) finding that the Cusacks thought that the parcel was unbuildable and any access unnecessary; and (3) determining that there was no great necessity for the easement given that the Lichina Trust established that its lot was "landlocked and useless without the easement." We agree with the Lichina Trust that there is no record support for the challenged findings of the trial court and that the court misapplied one of the legal requirements for an easement of necessity.

### 1. Applicable Law and Standard of Review

¶ 11 "An easement by necessity arises when the owner of a parcel of land grants part of the land to another party, leaving either the part granted or the part retained without access except through the other part." *Amada Fam. Ltd. P'ship v. Pomeroy*, 2021 COA 73, ¶ 58. To establish an easement of necessity, a party claiming the

6

easement must show that (1) there was a unity of ownership of the entire tract of land before the land was divided into separate lots; (2) the necessity for the easement existed at the time of such severance; and (3) the necessity for the particular easement is great. *Thompson v. Whinnery,* 895 P.2d 537, 540 (Colo. 1995).  The burden of proving that an implied easement of necessity exists is on the party claiming the easement.  *Id.*

¶ 12    An implied easement of necessity "has its roots in considerations of public policy that militate against rendering a tract of land useless for lack of access."  *Id.*  When a property is landlocked and lacks access to a public road as a result of division from its common owner, an easement is implied because "the law assumes that no person intends to render property conveyed inaccessible for the purpose for which it was [g]ranted."  *Wagner v. Fairlamb,* 379 P.2d 165, 169 (Colo. 1963).  Accordingly, whether reasonable means of access existed at the time of severance depends on whether the access route was adequate to effectuate the purpose for which the property was originally granted.  *See Thompson,* 895 P.2d at 541.  A property's purposes include not only the purposes the parties explicitly identified at the time of

conveyance, but also those uses the parties reasonably expected based on normal development of the property. *Id.*; *see also Pomeroy*, ¶ 59.

¶ 13 However, "[g]enerally implied easements have not been looked upon with favor by the courts." *Wagner*, 379 P.2d at 167. "The requirement that the necessity for a particular easement must be great reflects the application of that principle in the context of easements of necessity." *Thompson*, 895 P.2d at 540 n.7. To satisfy that requirement, a party seeking an easement of necessity must show that there is "a practical inability to have access any other way than by a way of necessity." *Wagner*, 379 P.2d at 168.

¶ 14 While "absolute physical impossibility of reaching the alleged dominant estate is not a requisite, an easement by implication will not be found if there are alternatives offering reasonable means of ingress and egress." *Campbell v. Summit Plaza Assocs.*, 192 P.3d 465, 470 (Colo. App. 2008). In making that determination, courts must consider whether the property is presently accessible any other way. *See LeSatz v. Deshotels*, 757 P.2d 1090, 1092 (Colo. App. 1988) (concluding that there was no great necessity for the sought easement because the plaintiff, among other things, could

create access to his property by building a bridge); *Bittle v. CAM-Colo., LLC*, 2012 COA 93, ¶¶ 35-37 (concluding that the plaintiff failed to satisfy the "great necessity" element because the property was presently accessible from another property).

¶ 15    When, as here, a district court enters judgment following a bench trial, we review that judgment as a mixed question of fact and law. *See Fear v. GEICO Cas. Co.*, 2023 COA 31, ¶ 15, *aff'd*, 2024 CO 77. In doing so, we accept the court's findings of fact unless they are clearly erroneous and unsupported by the record, but we review de novo its legal conclusions. *Id.*

¶ 16    Likewise, whether the trial court applied the correct legal standard is a question of law that we review de novo. *Wal-Mart Stores, Inc. v. Crossgrove*, 2012 CO 31, ¶ 7.

### 2. The Trial Court Erred by Concluding that the Lichina Trust Wasn't Entitled to an Implied Easement of Necessity Over the Access Road

¶ 17    As an initial matter, the parties don't dispute that the first element of the easement of necessity claim is present here. Indeed, the Gjovig Trust's trial counsel conceded that element in his opening statement and the record shows, as we note above, that both parcels were under the common ownership of the Cascade

9

Town Company until late 1948. The parties' dispute revolves around the other two elements of the claim — the requirements that the necessity must have existed at the time the unity of ownership was severed and that the necessity for the particular easement must be great. *See Thompson*, 895 P.2d at 540.

¶ 18 The trial court determined that the Lichina Trust failed to establish those two elements. It noted that the Lichina Trust presented no evidence that the necessity for the sought-after easement existed when the Cascade Town Company divided the land into the individual parcels that the parties eventually acquired. The court observed that "[the Lichina Trust] did not address the time of severance in its presentation. Instead, [the Lichina Trust] focused its case entirely on its claim of present necessity for an easement." And the court found that, at the time of severance, an easement over the access road across the Gjovig Trust's property wasn't necessary because the Lichina Trust's property was accessible by a road that crossed the retained land of the Cascade Town Company on the parcel that became the Barnes property. The court reasoned that under these circumstances, "there was no necessity, let alone great necessity," to use the Gjovig Trust's

property for access across land the company had already conveyed to third parties.

¶ 19    We disagree with the trial court's ruling because (1) the record doesn't support its determination that the requested easement wasn't necessary at the time of severance, and (2) the court failed to apply the proper legal standard in evaluating the third element of the Lichina Trust's claim.

a.    The Record Doesn't Support the Trial Court's Determination that There Was No Necessity at the Time of Severance

¶ 20    Initially, we clarify the layout of the access road at the time of severance because the parties' submissions regarding this issue — both in the trial court and on appeal — are confusing.  The record shows that the road the Lichina Trust is seeking an easement over is only a portion of the access road that existed when its parcel was severed from the common ownership of the Cascade Town Company.  We reach this conclusion after reviewing the evidence the trial court relied on to find that there was another way of reaching the Lichina Trust's property in 1948; namely, aerial photographs of the neighborhood and the plans from the Colorado Department of Transportation (CDOT) in connection with U.S.

Highway 24, which ran across the parties' land until it was moved to its current location in the 1930s.

¶ 21    As of the time of severance on November 17, 1948, the Cascade Town Company had conveyed Parcel 2 but retained Parcel 1 and Parcel 3 on Figure 1. The photographs from 1947, 1953, and 1960, and the CDOT plans from the 1930s and 1960s, showed a single road entering the Gjovig Trust's property from U.S. Highway 24, going across the Lichina Trust's parcel, proceeding east through the other parcel that the Cascade Town Company retained, and then connecting to U.S. Highway 24 again. The retained parcel through which the eastern portion of the access road once traversed is marked as Parcel 3 in Figure 1 and as the "Barnes" property in Figure 2.

¶ 22    However, it is undisputed that this part of the access road became impassable over time. Indeed, the parties stipulated that "[t]he former road to the east of the Lichina [Trust's] property through the Barnes property [was] no longer [usable] due to slope and roadway changes in topography adjacent to Highway 24." The trial court nonetheless determined that an easement over the Gjovig Trust's property wasn't necessary at the time of severance because

the Lichina Trust's property could be reached from the Barnes property. We disagree with the court for two reasons.

¶ 23 First, just because the access road had two entry points that could be used to reach the Lichina Trust's property doesn't mean that an easement over the entire access road wasn't necessary when the Cascade Town Company divided up the land. In other words, we're not persuaded that the parties to the original conveyance intended for the Lichina Trust's property to only be accessible through that portion of the road across the Barnes property but not the portion of the road across the Gjovig Trust's property. *See Campbell,* 192 P.3d at 472 (noting that in determining whether the necessity existed at the time of severance, we consider the intent of the parties to the conveyance). After all, at the time the Lichina Trust's property was severed, the Cascade Town Company retained both the Barnes property and the Gjovig Trust property (though only for a short time), leaving the Lichina Trust's parcel without access to U.S. Highway 24 except through the Cascade Town Company's retained land. This fact raises the presumption that an easement over the access road crossing the retained land — including both the Gjovig Trust's property and the

13

Barnes property — was necessary at the time of severance. *See Wagner*, 379 P.2d at 168 (an easement of necessity is implied "where the lands conveyed are without ingress or egress except over lands retained"). Thus, to the extent the trial court determined that an implied easement over the Gjovig Trust's property wasn't necessary at the time of severance because that property was owned by third parties (i.e., the Dittemores), that determination is not supported by the record.

¶ 24    Second, the trial court determined that the Lichina Trust failed to establish that the easement was necessary at the time of severance in part because the court (1) found that the Lichina Trust "presented no evidence of the purpose for which its property was conveyed" and (2) "infer[red] that the Cusacks recognized that the hostile topography rendered the property unbuildable, and access therefore unnecessary." We agree with the Lichina Trust's argument that these two factual findings aren't supported by the record.

¶ 25    Relying on *Campbell*, *Pomeroy*, and *Bittle*, the Lichina Trust asserts that the purpose for which it intended to use the property (i.e., for a garage) constituted "normal development" that was

reasonably expected when the property was first severed by the Cascade Town Company in 1948. In support, it points out that a house on the Gjovig Trust's property was constructed shortly after the severance. Put differently, the Lichina Trust argues that because neighboring parcels have been used for residential development, its parcel was likewise divided for that purpose and that the trial court erred by finding that it presented no evidence in that regard.

¶ 26 Thus, the Lichina Trust relies on the principle that the purpose for which a property was conveyed may be *implied* from the property's normal development in the circumstances where the parties failed to explicitly identify that purpose. However, we need not address this argument because the parties to the original conveyance expressly stated the purpose for which the Lichina Trust's parcel may be used. The language of the deed from 1948 explicitly indicated that the parcel was intended for residential development. The deed said that the "conveyance [was] made upon the express condition . . . that *no structure other than a dwelling house or buildings appurtenant thereto* shall be erected" on the parcel. (Emphasis added.) Therefore, the record doesn't support

the trial court's finding that the Lichina Trust presented no evidence of the purpose for which its parcel was conveyed.

¶ 27 We also agree with the Lichina Trust's argument that there is no record support for the trial court's inference that the Cusacks intended to leave the parcel without access because it was unbuildable. True, photos and the topographical map of the parcel show a steep, rocky, and rugged terrain. But nothing in the record suggests that the Cusacks thought that any access was unnecessary because the parcel wasn't suitable for development due to its hostile topography. Indeed, the fact that, at the time of severance, the Lichina Trust's property was accessible by the same road as the other two properties of the common owner supported a contrary inference. And perhaps more importantly, the parts of the original deed quoted above disproved that inference altogether.

¶ 28 Because the trial court's findings aren't supported by the record, we conclude that the court erred when it determined that the Lichina Trust failed to establish that the necessity for the easement over the Gjovig Trust's property existed at the time of severance.

### b.    The Trial Court Erred in Assessing the Third Element of the Lichina Trust's Easement of Necessity Claim

¶ 29    We also conclude that the trial court erred in analyzing whether the Lichina Trust established great necessity for the easement over the Gjovig Trust's property.  The court observed that the Lichina Trust didn't "present any evidence of great necessity for 'the particular easement' sought, at the time of severance."  It then concluded that the Lichina Trust failed to satisfy this requirement because at the time of severance, the portion of the access road across the Barnes property offered reasonable means of ingress and egress.  Put differently, the court determined that there was no *great necessity* for the easement over the Gjovig Trust's property for the same reason there was no *necessity at the time of severance.*

¶ 30    But the "great necessity" element is separate and distinct from the requirement that the necessity for the sought-after easement existed at the time of severance.  While the latter element requires a court to consider *only* the circumstances as they existed when the dominant estate was severed from the common ownership, the great necessity element requires the court to *also* consider whether the requested easement is *presently* necessary.  *See LeSatz,* 757 P.2d at

17

1092; *Bittle*, ¶¶ 35-37; *see also Bob Daniels & Sons v. Weaver*, 681 P.2d 1010, 1017 (Idaho Ct. App. 1984) (stating that, under Idaho law, the third element of the claim requires "great present necessity for the easement").

¶ 31        In assessing great necessity at the time of severance, the trial court relied on a statement from *Campbell* providing that "[t]he critical time in determining the existence of an easement by necessity is the time when the dominant estate is severed from the servient estate." 192 P.3d at 470 (quoting *Hurlocker v. Medina*, 878 P.2d 348, 351 (N.M. Ct. App. 1994)). But the trial court's reliance on this language was misplaced. Even though the *Campbell* division noted that the time of severance was "critical" when determining whether an easement of necessity exists, it *also* considered the present circumstances in addressing the third element of the claim. The division affirmed the trial court's determination that the necessity for the easement was great in part because the plaintiffs' lot was presently landlocked, they "were unable to negotiate access to their lot over any of the other adjacent property," the lack of access rendered the lot useless, and that result was contrary to public policy. *Id.* at 472-73. Thus, *Campbell*

18

doesn't stand for the proposition that whether the necessity for the particular easement is great should only be assessed at the time of severance.[2]  *See LeSatz*, 757 P.2d at 1092 (assessing great necessity at time of suit); *Bittle*, ¶¶ 35-37 (same).

¶ 32    The trial court here misapplied *Campbell* and other cases of this court referenced above by only considering the time of severance to determine whether the Lichina Trust established the third element of its easement of necessity claim.  The court essentially collapsed two separate requirements of the claim by concluding that the fact the Lichina Trust's property was accessible at the time of severance from the two entry points for the same road automatically meant that there was no great necessity for the easement, even though the circumstances have changed since the severance and only a portion of the former road still exists.  We conclude that by limiting its analysis to the circumstances existing at the time of severance, the court failed to apply the correct legal standard.

---

[2] Notably, *Hurlocker v. Medina*, 878 P.2d 348, 351 (N.M. Ct. App. 1994), the case *Campbell* quoted, used the "critical time" language in connection with the unity of ownership element of the claim, not in connection with great necessity.

¶ 33    In doing so, the court also failed to consider evidence of the present great necessity for the easement over the Gjovig Trust's property. For example, Lichina testified that his trust's parcel wasn't accessible from his home on foot or otherwise due to the sixty percent drop between the two parcels. *Cf. Bittle*, ¶ 35 (concluding that a party failed to establish great necessity for the particular easement when the alleged dominant estate was accessible on foot from another property of the party). He also testified that while he had driven to his trust's parcel through the Barnes property on numerous occasions in the past, that portion of the access road was no longer passable. Lichina stated that the only alternative to accessing the parcel through the Gjovig Trust's property would be a bridge from U.S. Highway 24, which, according to Lichina, would be "a two-million-dollar" construction project. *Cf. LeSatz*, 757 P.2d at 1092 (owner of landlocked property failed to show great necessity for the easement sought where he could obtain license for construction of a foot or vehicular bridge and where there was no evidence that the cost of such a construction would be prohibitive or grossly in excess of the value of the property itself). And he testified that, in the absence of the easement, his trust's

parcel is useless.  *See Campbell,* 192 P.3d at 472-73 (concluding that the third element was met in part because the lack of access rendered the property useless, and that result was contrary to public policy).

¶ 34    In sum, the trial court erred in its application of the great necessity requirement by only evaluating it at the time of severance. It also erred in its findings that alternate access at the time of severance meant that there was no great necessity for an easement and that the Cascade Town Company deeded the property with the intent that the parcel remain landlocked.  We therefore reverse the court's judgment and remand the case for further proceedings consistent with this opinion.

## B.    Trial Court Attorney Fees

¶ 35    On cross-appeal, the Gjovig Trust contends that the trial court erred by denying its motion for an award of attorney fees under section 13-17-102, C.R.S. 2024.  We disagree.

### 1.    Applicable Law and Standard of Review

¶ 36    Section 13-17-102(2) provides that a court may award attorney fees against a party "who has brought or defended a civil action, either in whole or in part, that the court determines lacked

substantial justification." As pertinent here, "lack[s] substantial justification" means "substantially groundless." § 13-17-102(9)(a). "A claim is substantially groundless if the allegations in the complaint, while sufficient to survive a motion to dismiss for failure to state a claim, are not supported by *any* credible evidence at trial." *Gravina Siding & Windows Co. v. Gravina*, 2022 COA 50, ¶ 87 (emphasis added) (quoting *City of Aurora v. Colo. State Eng'r*, 105 P.3d 595, 618 (Colo. 2005)). A claim is also groundless if no evidence supports an essential element of that claim, even if there is evidence supporting other elements. *State ex rel. Coffman v. Robert J. Hopp & Assocs., LLC*, 2018 COA 71, ¶ 29. However, a losing position isn't necessarily groundless, nor is a claim that fails to establish a prima facie case if some credible evidence supports that claim. *Id.*

¶ 37    A trial court is in the best position to determine whether a claim lacked substantial justification because that analysis is a question of fact for the trial court. *Argo v. Hemphill*, 2022 COA 104, ¶ 51. Therefore, we review a trial court's denial of a motion for an award of attorney fees for an abuse of discretion. *Front Range Res., LLC v. Colo. Ground Water Comm'n*, 2018 CO 25, ¶ 15. A court

abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or is based on a misapplication or misunderstanding of the law. *See id.*

### 2. The Trial Court Didn't Abuse Its Discretion by Denying the Attorney Fee Request

¶ 38 The Gjovig Trust contends that the trial court abused its discretion by denying the motion for an award of attorney fees because the Lichina Trust's claims for a prescriptive easement and an implied easement of necessity were substantially groundless. As to the former claim, the Gjovig Trust asserts that the Lichina Trust provided no evidence that the access road had been used without interruption for the statutory prescriptive period of eighteen years. *See* § 38-41-101(1), C.R.S. 2024. Similarly, the Gjovig Trust argues that the easement of necessity claim was substantially groundless because the Lichina Trust presented no evidence that there was a great necessity for the easement at the time of severance, a material element of that claim. We discern no error.

### a. The Prescriptive Easement Claim Wasn't Substantially Groundless

¶ 39 As we note above, the Lichina Trust asserted the prescriptive easement claim as an alternative theory for relief. In support, it

alleged that the access road across the Gjovig Trust's property had been used continuously "[f]or a period well in excess of 18 years." The Lichina Trust further alleged that "[u]pon information and belief, the Access Road was used [starting] in the 1960s through [the trust's] ownership of the [parcel]." And in the discovery responses it provided approximately fifteen months later, the Lichina Trust indicated that the following persons had used the road to access the parcel:

> Tom and Mary Lichina, and their real estate agent . . . , when looking at the [parcel] prior to purchase, and then after closing on the purchase. Upon information and belief, prior owners (and guests or invitees of those owners) of the [parcel] including their agents.

¶ 40 The trial court dismissed the prescriptive easement claim after granting the Gjovig Trust's uncontested motion for partial summary judgment.[3] Even so, we perceive no error in the trial court's determination that the Lichina Trust's prescriptive easement claim didn't lack substantial justification. For starters, it is appropriate for a party to permit the disposal of a claim after completing

---

[3] The Lichina Trust failed to respond to the motion even though the trial court granted its request for an extension of time in which to file a responsive brief.

discovery and realizing that the claim can't prevail. While the better practice would have been for the Lichina Trust to voluntarily dismiss its prescriptive easement claim, the fact that the court dismissed it upon the Gjovig Trust's uncontested motion for partial summary judgment doesn't automatically mean that the claim was substantially groundless.

¶ 41     Moreover, the record shows that some evidence supporting the existence of a prescriptive easement did come out at trial. For example, Lichina testified that he and his wife had used the Gjovig Trust's property to access their trust's parcel both before and after they purchased it in 2003. He also testified that, while they weren't allowed to utilize the road after Gjovig denied them access in 2010 or 2011, it was his understanding that this road had been in use since the 1940s. Thus, to the extent the Gjovig Trust argues that the Lichina Trust presented no evidence (whether before or at trial) in support of its prescriptive easement claim, this testimony cuts against that argument.

### b. The Easement of Necessity Claim Wasn't Substantially Groundless

¶ 42 Similarly, we disagree with the Gjovig Trust's argument that the claim for an implied easement of necessity was substantially groundless. Again, the Lichina Trust presented evidence that there was a unity of ownership over the property until 1948, when its parcel was severed from the common owner; the parcel was conveyed for residential development; the road across the Gjovig Trust's property existed at that time and had been historically used to access the parcel; and the parcel is useless without the easement because it can't be accessed any other way. The mere fact that the trial court determined that the Lichina Trust still failed to establish the second and third elements of its implied easement of necessity claim — a determination that we reverse in this appeal — doesn't render the easement of necessity claim groundless. Indeed, the above record shows that the Lichina Trust presented at least some evidence in support of that claim. *See Robert J. Hopp & Assocs., LLC*, ¶ 29.

¶ 43 Under these circumstances, then, we can't say that the trial court's decision to deny the Gjovig Trust's request for an award of

attorney fees was manifestly arbitrary, unreasonable, or unfair, or was based on the court's misapplication of the law. *See Front Range Res., LLC*, ¶ 15. We therefore conclude that the trial court did not abuse its discretion in denying the request.

## C. Appellate Attorney Fees

¶ 44 Finally, because we conclude that the Lichina Trust's claims weren't substantially groundless, we also disagree with the Gjovig Trust's argument that "[t]his appeal is a mere extension of the original groundless claims." Indeed, the Lichina Trust prevailed in this appeal by successfully challenging the trial court's judgment. *See Mountain States Adjustment v. Cooke*, 2016 COA 80, ¶ 47 (nonprevailing appellate party is not entitled to an award of appellate attorney fees). We therefore deny the Gjovig Trust's request for appellate attorney fees.

## III. Disposition

¶ 45 The trial court's judgment is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion. The attorney fee order is affirmed.

JUDGE HARRIS and JUDGE TOW concur.

27